**The below described is SIGNED.**

**Dated: May 04, 2006**

_____
**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>DOROTHY BALL,<br><br>Debtor. | Bankruptcy Number: 05-24915 JAB<br><br>Chapter 7 |
| R. KIMBALL MOSIER, Trustee of the Bankruptcy Estate of DOROTHY BALL,<br><br>Plaintiff,<br><br>vs.<br><br>LESTER A. PERRY and HOOLE & KING, L.C.,<br><br>Defendants. | Adversary Proceeding No. 05-2663 JAB<br><br>Judge Judith A. Boulden |

## MEMORANDUM DECISION

Before the Court is Lester A. Perry's (Perry) and Hoole & King, L.C.'s (collectively "Defendants") Motion for Summary Judgment and the Trustee's Cross Motion for Summary Judgment. The Court must determine whether two transfers of the debtor's property held in the

Defendants' trust account are voidable under 11 U. S. C. § 547,[1] or are subject to the Defendants' statutory lien or are otherwise not avoidable by the Trustee, and whether the balance of funds held in the trust account should be turned over to the Trustee as property of the estate.

Oral arguments were presented to the Court on April 27, 2006. The Court has considered the matters properly before it, the arguments presented, and has conducted an independent review of applicable law. Based thereon, the Court makes the following ruling.

## I. JURISDICTION AND LEGAL STANDARD

This is a core proceeding under 28 U.S.C. § 157(b)(2)(E) and (F) and the Court may enter a final order. Federal Rule of Bankruptcy Procedure 7056 makes summary judgment appropriate when, after consideration of the record, the Court determines that "there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] In applying this standard, the Court examines the factual record in the light most favorable to the nonmoving party.[3] There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."[4] The moving party has the burden of establishing that it is entitled to summary judgment.

## II. UNDISPUTED FACTS

1. Dorothy Ball (Ball) filed a Chapter 13 petition on August 17, 2004.

---

[1] All future statutory references are to title 11 of the United State Code unless otherwise indicated.

[2] FED. R. BANKR. P. 7056(c).

[3] *See Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

[4] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

2. At the time Ball's Chapter 13 Petition was filed, Ball was a defendant in a state court civil proceeding.

3. The state court civil proceeding was still pending at the time Ball's Chapter 13 case was dismissed on January 4, 2005.

4. On January 17, 2005, Ball retained the Defendants as legal counsel to represent Ball, Cynthia Dumas (Dumas) and Elite Demonstrations in the state court civil proceeding.

5. In early February 2005, the Defendants entered into a written retainer agreement with Ball and Dumas acknowledging the receipt of a $5,000 retainer from Dumas which Perry deposited in a trust account.[5]

6. By February 28, 2005, the Defendants has incurred $15,791.87 in fees.

7. On March 22, 2005, Ball signed a letter acknowledging that an additional $50,000 would be contributed to the trust account.

8. On that same day, Ball borrowed $45,000 from her son-in-law, and gave her son-in-law in return a Trust Deed on a home she owned at 4358 South 700 East, Salt Lake City, Utah.

9. Three days later on March 25, 2005, Ball paid Perry $45,000.00. This money was deposited into the trust account.

10. On March 27, 2005, $15,791.87 was transferred out of the trust account and paid to the Defendants to reimbursed them for work performed during February 2005.

---

[5] This $5,000 retainer is the subject of an adversary proceeding currently pending in Cynthia Dumas's bankruptcy case.

11. On March 29, 2005, the Defendants paid to an expert witness $4,024.80 from the trust account.

12. Also on March 29, 2005, an additional $4,000 was transferred from the trust account in partial payment of work performed by the Defendants during the month of March. The total amount billed for work done in March was $12,984.24. Dumas paid the balance of the fees from other funds.

13. On that same day, Perry paid Ball $16,183.39 from the trust account.

14. The $4,000 and $15,791.87 transfers to the Defendants totaling $19,791.87 will be referred to as the Subject Transfers.

15. The Defendants currently retain $4,999.94 of the $45,000 deposited by Ball in the trust account (the Trust Account Balance).

16. Ball filed a Chapter 7 petition on April 1, 2005.

17. R. Kimball Mosier (Trustee) was appointed interim trustee in the above-captioned case on April 6, 2005 and became permanent Trustee on May 12, 2005, the date Ball's meeting of creditors was held pursuant to § 341.

### III. DISCUSSION

The Defendants ask the Court to grant summary judgment in their favor and find that the Trustee cannot avoid the alleged preferences for two reasons: first, the fixing of a lien on March 25, 2005 on the funds in the trust account is not avoidable because the lien is a statutory lien under Utah Code Ann. § 38-2-7 (Utah attorney lien statute); and second, the Defendants' claim for fees was secured by the funds in the trust account, and therefore the Defendants received no more through the Subject Transfers than they would have received in a distribution of assets

within this Chapter 7 proceeding. In response, the Trustee argues that a lien could not affix to the $45,000 Ball paid into the trust account because the Utah attorney lien statute does not create a statutory lien as used in § 547(c)(6) and § 101(53), and that the Defendants are not secured by the lien and were, therefore, paid more than they would have received in this Chapter 7 proceeding. Further, to the extent the Defendants' raise an ordinary course defense under § 547(c)(2), contested issues of fact exist.

The Trustee seeks summary judgment on his claim under § 542 for turnover of the Trust Account Balance. Although the Defendants assert that they do not currently have a claim against the Trust Account Balance for fees due, they resist turnover because if the Trustee is successful in avoiding the fixing of the lien or the Subject Transfers, then they would have a claim for fees to which the Trust Account Balance would attach.

### A. The Fixing of the Lien, the Subject Transfers and § 547

The Defendants argue that they have a valid, non-avoidable statutory lien on all funds that were deposited in their trust account, and that the Subject Transfers are immune from the Trustee's avoidance powers. For the following reasons, the Court agrees that the undisputed facts demonstrate that the Trustee cannot avoid either the fixing of the statutory lien or the Subject Transfers.

Section 547(c)(6) provides that a trustee may not avoid a transfer "that is the fixing of a statutory lien that is not avoidable under § 545."[6] The validity of an attorney's

---

[6] Some courts have held that § 546(c)(6) encompasses more than just the "fixing" or perfection of a statutory lien during the preference period. Section 546(c)(6) also precludes a trustee from avoiding transfers that satisfy statutory liens. *Klein v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 95 (2d Cir. 1994) (holding that the pre-petition filing of a notice of lien qualifies as the fixing of a statutory lien and that is cannot be avoided by a trustee); *Cimmaron Oil Co., Inc. v. Cameron*

I:LAW/Opinions/Opin0474         5

statutory lien is determined by state law.[7] To escape the trustee's avoiding powers under § 547(c)(6), the attorney's statutory lien must qualify as a statutory lien as defined by § 101(53) of the Bankruptcy Code which provides:

> The term 'statutory lien' means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

This definition expressly excludes judicial liens and security interests. "A statutory lien is one that arises automatically"[8] and unlike a security interest or a judicial lien, a statutory lien is not dependent upon an agreement to give a lien or upon some judicial action.[9] In examining the difference between a judicial lien and a statutory lien, the Third Circuit has stated that the relevant inquiry is "whether [the lien] arises solely by force of statute, or whether it results from some type of judicial process of proceeding." The Utah attorney lien statute creates a statutory lien as defined by the Bankruptcy Code. The statute provides:

> (2) An attorney **shall have a lien for the balance of compensation due from a client** on any moneys or property owned by the client that is the subject of or connected with work performed for the client, including, but not limited to:

---

*Consultants, Inc.* 71 B.R. 1005, 1010 (N.D.Tex. 1987) (stating that the legislative history of § 547(c)(6) "reflects Congress' intent that § (c)(6) also exempt from the trustee's avoiding power transfers in satisfaction of such liens") (internal citations and quotations omitted).

    [7]    *In re Life Imaging Corp.*, 31 B.R. 101, 102 (Bankr. D.Co. 1983) (citing *In re Campbell*, 26 B.R. 145 (Bankr. Colo. 1983)).

    [8]    *In re McNeely*, 51 B.R. 816, 820 n.2 (Bankr. D. Utah 1985) (quoting H.R.REP. NO. 95-595, 95th Cong., 1st Sess. 314 (1977), 1978 U.S.Code Cong. & Admin.News, p. 6271; S.REP. NO. 95-989, 95th Cong., 2d Sess. 27 (1978), 1978 U.S.Code Cong. & Admin.News, pp. 5812-13).

    [9]    A judicial lien is defined by the Bankruptcy Code as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." *See* § 101(36). A security interest is defined as a "lien created by agreement." *See* § 101(51).

(a) any real or personal property that is the subject of or connected with the work performed for the client;
(b) any funds held by the attorney for the client, including any amounts paid as a retainer to the attorney by the client; and
(c) any settlement, verdict, report, decision, or judgment in the client's favor in any matter or action in which the attorney assisted, including any proceeds derived from the matter or action, whether or not the attorney is employed by the client at the time the settlement, verdict, report, decision, or judgment is obtained.
(3) **An attorney's lien commences at the time of employment of the attorney by the client** (emphasis added).[10]

This statute creates a statutory lien because it is automatic (arising solely by the force of the statute), it "commences at the time of employment of the attorney by the client" (on specified terms or conditions), and it is enforceable against the client for "the balance of compensation due from a client." The lien is not dependent on any agreement to give a lien or upon any judicial action — it automatically arises under the statute for any balance of compensation due from a client.[11]

During oral arguments, the Trustee argued that the Utah attorney lien statute, like a mechanic's lien, is merely a lien that arises by operation of a statute and is not a statutory lien as defined by the Bankruptcy Code. The Trustee's argument is erroneous for two reasons. First, a mechanic's lien is, in most circumstances, a statutory lien. The legislative history interpreting § 547(c)(6) provides examples of a statutory liens — a mechanic's lien is listed as one of those examples.[12] The Trustee has not directed the Court to any controlling case law to support his

---

[10] UTAH CODE ANN. § 38-2-7.

[11] The statute does provide a judicial mechanism to enforce or otherwise collect an unpaid lien but the creation of the lien itself if automatic. *See* UTAH CODE ANN. § 38-2-7(4) – (7).

[12] *McNeeley*, 51 B.R. at 820 n.2 (quoting H.R.REP. NO. 95-595, 95th Cong., 1st Sess. 314 (1977), 1978 U.S.Code Cong. & Admin.News, p. 6271; S.REP. NO. 95-989, 95th Cong., 2d Sess. 27 (1978), 1978 U.S.Code Cong. & Admin.News, pp. 5812-13).

statement that mechanic's liens are not statutory liens. Second, the Trustee has failed to point the Court to any case law adopting his position or giving an example of a lien that is created by operation of a statute that is not a statutory lien.[13]

Under the Utah attorney lien statute, the Defendants had a statutory lien on any funds held in their trust account for work actually performed.[14] When Ball deposited the $45,000 into the trust account on March 25, 2005, the Defendants had already performed work on her behalf. The Defendants had earned $15,791.87 for work done in February and $ 4,000 for work done in March.[15] As a result, the fixing of the statutory lien up to $19,791.87 occurred upon the deposit of the $45,000 in the trust account under the Utah attorney lien statute. Perfection occurred upon possession of the funds. Had Ball filed bankruptcy at that time, the Trustee would have had no power to avoid the fixing of that statutory lien under § 547(c)(6) as long as the lien was not otherwise avoidable under § 545.

---

[13] In its review of applicable case law, the Court found two cases in which courts determined that liens were not statutory The first is a case that involved a lien that arose from a confession of judgment. *Gardner v. Pennsylvania, Dep't of Public Welfare,* 685 F.2d 106, 108 (3d Cir. 1982), *cert. denied*, 459 U.S. 1092 (1982). The debtor had received public assistance prior to filing. *Id*. Because he owned real property he was required to sign reimbursement agreements as a condition of receiving the public assistance. *Id*. As a part of these agreements, confessions of judgment were recorded against his real property and became liens. *Id*. The court held that Pennsylvania has not provided "that the property of recipients of public assistance is automatically subject to a reimbursement lien by operation of law." *Id*. at 109. In the second case, *Coston v. Coston (In re Coston)*, 65 B.R. 224 (Bankr. D.N.M. 1986), the court found that a lien created by levy or attachment is not a statutory lien even though the lien "was created by compliance with statutorily established requirements." *Id.* at 226.

[14] UTAH CODE ANN. § 38–2-7(2)(b).

[15] The total balance owing for work done in March was $12,984.24 but the balance of this amount was paid by Dumas and as a result, only $4,000 was withdrawn from the trust account to reimburse the Defendants for work done in March.

The statutory lien that secured the Defendants' claim was subsequently satisfied when the Subject Transfers were transferred from the trust account to the Defendants. Admittedly, the transfers were made within the 90-day preference period but "[a] transfer of property does not constitute a preference . . . unless the transfer enables a creditor to receive more than such creditor would receive if the case were a chapter 7 case, the transfer had not been made, and the creditor received payment of such debt to the extent provided by the provisions of Title 11."[16] If the Defendants (who held a valid statutory lien that was not avoidable under § 545) had not been paid, then they would hold a secured claim in the earned portion of the retainer. The subsequent payment of that secured claim is not a preference under § 547(b)(5).[17] This occurs because the Defendants, who became secured creditors at the time the statutory lien was created, received no more than they would have received in a Chapter 7 liquidation when they were reimbursed for the work actually performed. For these reasons, the Court finds that the Trustee cannot avoid the Subject Transfers and the Court need not address the Trustee's contention regarding the ordinary course defense.

### B. Turnover of the Trust Account Balance

As for the Trust Account Balance, there are no facts indicating that Ball owes the Defendants any more money — stated differently, there is no allegation that there is any compensation due to the attorney from the client. As such, there is no statutory lien on any funds remaining in the Defendants' possession. Therefore, the Court grants in part the Trustee's

---

[16] *Cimmaron Oil Co., Inc. v. Cameron Consultants, Inc.*, 71 B.R. at 1011.

[17] *Bryant v. JCOR Mechanical, Inc.* (*In re Electron Corp.*), 336 B.R. 808, 813 (10th Cir. B.A.P 2006).

I:LAW/Opinions/Opin0474                    9

Motion for Summary Judgment and finds that the Defendants have no right to the Trust Account Balance.

## IV.  CONCLUSION

For the reasons stated above, the Court grants, in part, the Defendants' Motion for Summary Judgment finding that the fixing of the statutory lien and the Subject Transfers are not avoidable under § 547.  The Court also grants the Trustee's Cross Motion for Summary Judgment seeking turnover of the Trust Account Balance under § 542.  A separate order will issue.

_____END OF DOCUMENT_____

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

R. Kimball Mosier
Parsons Kinghorn Harris
111 East Broadway
Suite 1100
Salt Lake City, UT 84111
    *Plaintiff*

Lester A. Perry
Hoole & King
4276 South Highland Drive
Salt Lake City, UT 84124
    *Defendants*

United States Trustee
#9 Exchange Place
Suite 100
Salt Lake City, UT 84111-2147